IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2000 Session

## STATE OF TENNESSEE v. ROBERT LEE MALLARD

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-46763      J. Steve Daniel, Judge**

———————————————

**No. M2000-00351-CCA-R3-CD - Filed February 23, 2001**

———————————————

In a two count indictment, Defendant was charged in Rutherford County Circuit Court with attempting to tamper with or fabricate evidence, and with resisting arrest. Following a jury trial, he was convicted of both offenses. In this appeal, the Defendant argues that the trial court erred by denying his motion to suppress evidence and he further asserts that the evidence is insufficient to sustain the conviction for attempting to tamper with or fabricate evidence. After a review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Jim Wiseman, Murfreesboro, Tennessee (on appeal) and Gerald L. Melton, District Public Defender; and Brion J. Payne, Assistant Public Defender, Murfreesboro, Tennessee (at trial) for the appellant, Robert Lee Mallard.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; Paul A. Holcombe, III, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. FACTS

We will set forth the facts from the testimony at both the suppression hearing and the trial See, State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). The Defendant did not testify at either the suppression hearing or the trial, and the facts were largely undisputed and uncontradicted. Officers Allen Cox and Tim Meeks of the Murfreesboro Police Department, were assigned to the bicycle patrol, concentrating on housing projects and other areas of high crime rates in Murfreesboro in October, 1998. On October 18, 1998, Cox and Meeks arrived in the area of the Vaughn Street

Housing Project at approximately 6:45 a.m.  They initially looked down into the housing project from the top of a hill behind a chain-link fence.  From this vantage point, they observed the Defendant standing in a breeze way near unit 522-A.  This unit had been previously identified to the officers as an area of drug trafficking.  There were a few other people standing around the general area.  The officers were located approximately 75 to 100 yards from the Defendant when they observed him.  Cox and Meeks started riding down the hill at a fast pace, going toward the Defendant. Officer Cox made eye contact with the Defendant when Cox was about one-fourth (1/4) of the way, or 25 yards, down the hill.  Cox testified that the Defendant quickly turned and began walking at a fast pace away from the officers and up the steps toward unit 522-C.  Cox knew that this was Kathy Houston's apartment, and that there had been previous reports of drug trafficking involving Unit 522-C.

Cox described Defendant's actions as a "turn and burn."  At this particular point, neither officer knew the Defendant's identity.  In fact, when they first observed him, they could not identify his race or his gender.

When the Defendant began walking at a fast pace away from the officers, they split up to the extent that Meeks drove his bicycle toward the back of the apartment building and Cox continued on in the direction that Defendant was traveling.

Between the time that Defendant made eye contact and turned around to walk away from the officers and the time he entered apartment 522-C, Cox verbally asked Defendant to stop "several times."  Defendant did not stop, but went ahead and entered apartment 522-C.  Being close behind the Defendant, Cox heard a female voice ask what he was doing.  Cox inferred that the voice was directed towards Defendant.  Cox walked up to the entrance of apartment 522-C and found the metal door open, but the screen door closed.  He could see inside through the screen door and saw a woman and a man, not the Defendant, sitting on the couch.  The Defendant was standing in the apartment facing away from Cox.  The Defendant had his right-hand fist clenched "as if he [Defendant] were holding something in it."

Cox began to yell for the Defendant to stop, because he felt the Defendant was going to destroy whatever he had in his hand, or at least throw it down in the apartment.  The Defendant turned and faced Cox, and Defendant began walking through the living room of the apartment and down a hallway .  Cox immediately recognized the Defendant as a person he had arrested three to four previous times on charges relating to drug paraphernalia, specifically a crack cocaine pipe, and in regard to other schedule drugs.  Cox testified that he asked the Defendant to stop in order to initiate an investigation as to why Defendant was hurrying away from Officers Cox and Meeks.  Then, Cox asked the Defendant to approach  him, but the Defendant refused and told Cox that he did not have the right to touch Defendant or stop him.

At this point, the Defendant began to slowly raise his hand towards his mouth.  Based on his previous experience as a police officer involved in narcotics investigations, Cox concluded that the Defendant was attempting to swallow a narcotic which was being held in the Defendant's hands.

Cox warned the Defendant three or four times not to put his hand near his mouth and not to place whatever he had in his hand into his mouth. Defendant disregarded the instructions and put his hand to his mouth, at which point Cox grabbed the Defendant in the throat area. Cox used a technique to force Defendant to open his mouth. He then tried to retrieve whatever was in the Defendant's mouth, but the Defendant began to struggle and resist both the verbal commands and the physical restraints being placed upon him by Cox and soon, Officer Meeks. At one point, the Defendant grabbed the holster of Cox's service weapon, forcing Cox to cease his efforts to get the substance out of Defendant's mouth, in order to totally restrain the Defendant.

During the fracas, Cox observed in Defendant's mouth a substance that he believed to be a white rock, consistent with a rock of crack cocaine. It was located on the Defendant's tongue. This object was swallowed by the Defendant during the altercation. During a search incident to arrest, a small piece of paper was found in Defendant's wallet. That paper, along with other objects, was tested for cocaine residue and a forensic scientist from the TBI Crime Laboratory confirmed that the piece of paper contained cocaine residue.

The proof was uncontradicted that there had been no complaints to the police about the Defendant on the particular day that he was arrested and that there were no outstanding arrest warrants for the Defendant. Also, the officers admitted that the Defendant was doing nothing illegal at the time they observed him, and that the Defendant was just "standing there." The officers admitted that they did not have a search warrant for the Defendant or for apartment 522-C, and that the Defendant did not consent to a search of his person. The officers testified that they were each in their police uniform on the day of Defendant's arrest.

## II. ANALYSIS

### A. Motion to Suppress

The Defendant filed, pre-trial, a motion to suppress all evidence seized during the search of the Defendant's person, and presumably including all testimony regarding what was observed by the officers during the seizure of Defendant. The trial court denied the motion to suppress following an evidentiary hearing. The trial court concluded that Officers Cox and Meeks initiated an investigation by speeding toward the premises where Defendant was standing, and that Defendant moved briskly away from them and up a stairway and into an apartment. The trial court further found that the officers were knowledgeable of the apartment complex, that various units of the complex were known for distribution of illegal drugs, and that Defendant did not live in the apartment that he had entered. He further found that the officers' investigation was "enhance[d]" by the response of the female inside the apartment, after Defendant had entered it, to the effect that she wanted to know "what are you doing here." The trial court found that the Defendant was asked to turn around by the officer and he reluctantly did so. At that point, the Defendant was identified by the officer as someone the officer had previously arrested. The officer, therefore, had knowledge of the Defendant's prior arrests for violation of drug and drug paraphernalia laws. The trial court also found that the Defendant had some object clenched in his hand and the officer advised him not to

put it in his mouth, but the Defendant did so. The trial court found that at this point the investigation "had been converted" to one where probable cause existed for the arrest of the Defendant for destruction of evidence.

The standard of review by which an appellate court must review a trial court's findings of fact on suppression issues is as follows:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

However, the application of the law to the facts found by the trial court is a question of law which must be reviewed de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Defendant argues on appeal that the officers lacked probable cause and reasonable suspicion, based upon articulable facts, to justify either an arrest or an investigatory stop. We find that we can dispose of this matter without addressing the issue of whether the officers violated Defendant's rights guaranteed by the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution, in the manner asserted by Defendant.

Assuming, arguendo, that there was a constitutionally infirm seizure of Defendant, under the facts of this case, the evidence seized is still not suppressible. There is authority to hold that Defendant was "seized" as soon as Officer Cox told him to "stop" when he had turned away from the approaching officers and began to walk quickly away toward apartment 522-C. See State v. Daniel, 12 S.W.3d 420, 426 (Tenn. 2000) (recognizing that courts have typically held that an encounter between a police officer and a citizen becomes a "seizure" if an officer: (1) pursues an individual who has attempted to terminate the contact by departing; . . . (4) verbally orders a citizen to stop and answer questions).

In any event, the Defendant was "seized" by Officer Cox no later than the point in which Officer Cox entered apartment 522-C and ordered Defendant to turn around and approach Cox. Id. at 424. ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen, may we conclude that a 'seizure' has occurred.")(citing Terry v. Ohio, 392 U.S. 1, n. 16, 88 S. Ct. 1868, at 1879, n. 16, 20 L. Ed. 2d 889.

Nevertheless, even if that seizure was in violation of Defendant's constitutional rights, at the point that he began to raise his closed hand toward his mouth, and continued to do so despite the fact that Officer Cox requested that he not place his hand near his mouth, Officer Cox had probable cause to make an arrest for the offense of tampering with or fabricating evidence.

An illegal stop, arrest or seizure does not justify the total exclusion of whatever takes place after the illegal stop, seizure, or arrest. This conclusion is especially true when applied to crimes committed subsequent to the illegal stop, seizure, or arrest. Such evidence is not obtained as a direct result of exploitation of a constitutionally infirm stop, arrest, or seizure. For instance, if an officer makes an illegal stop of a motor vehicle, and the driver of that vehicle subsequently gets out of his or her car and assaults the officer, prosecution for the assault, and any evidence seized as a result of an arrest for the assault, should not be suppressible even though there was an illegal stop of a vehicle. We are persuaded by the reasoning of the Fourth Circuit Court of Appeals in United States v. Sprinkle, 106 F.3d. 613 (4th Cir. 1997).

In Sprinkle, the defendant was a passenger in a vehicle stopped by police officers. The defendant ran away and was chased by one of the officers. The defendant shot one time, with a handgun, toward the officer. The defendant was later apprehended in possession of the handgun he had used to shoot at the officer. Indicted by a federal grand jury for possessing a firearm, after conviction for a felony in violation of 18 U.S.C. § 922(g)(1), the defendant filed a motion to suppress claiming that the gun was the fruit of an unlawful stop. The federal district court granted the defendant's motion to suppress, but the Fourth Circuit Court of Appeals reversed.

The appellate court agreed that the initial stop and seizure of the defendant were constitutionally unjustified, but further held that the defendant's own illegal acts, after the initial stop, triggered an exception to the "fruit of the poisonous tree" doctrine. In doing so, the court specifically held,

> If a suspect's response to an illegal stop "is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime." United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir. 1982). [citations omitted] There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest. Id. As the Bailey court recognized, "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Id. Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible. See id. at 1018.

Sprinkle, 106 F.3d at 619.

Applying the applicable law to the facts of that case, the <u>Sprinkle</u> court stated as follows:

> In this case, Sprinkle fled when Officer Riccio began the patdown. Sprinkle pulled his .357 Magnum as Officer Riccio chased him. After Riccio had pursued Sprinkle about two blocks, Sprinkle took a shot at Riccio. When Sprinkle drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop. <u>See</u> S.C. Code Ann. § 16-23-410 (Law. Co-op. Supp. 1995) ("It is unlawful for a person to present or point at another person a loaded or unloaded firearm."). At this point, Officer Riccio had probable cause to arrest Sprinkle because the new crime purged the taint of the prior illegal stop. And the gun, which was in plain view at the scene of the new crime, could be legitimately seized.

<u>Sprinkle</u>, 106 F.3d at 619-20.

Even if the initial seizure of Defendant was constitutionally unjustified, at the point that he raised his clenched fist toward his mouth and inserted an object into his mouth, under all of the circumstances, Officer Cox had probable cause to believe that the Defendant was committing the crime of tampering with or fabricating evidence. He therefore had justification to take whatever steps were necessary to arrest Defendant for that crime; this was a "new and distinct crime" even if it was triggered by an illegal seizure. Therefore, under the rationale of <u>Sprinkle</u>, there was a sufficient intervening event to allow for independent grounds for the arrest and subsequent search incident to the arrest.

The Defendant is not entitled to relief on this issue.

## B.  Sufficiency of the Evidence.

On appeal, Defendant does not challenge the sufficiency of the evidence to support his conviction for resisting arrest, and that conviction is affirmed. Regarding the conviction for attempt to commit the offense of tampering with or fabricating evidence, we initially note that the prosecutor, just prior to trial, announced to the court that the indictment alleged an "attempt" to commit the offense of tampering with or fabricating evidence, and in fact, the State was prepared to prove that Defendant had committed the offense and not merely attempted to do so. However, the prosecutor acknowledged that the State would proceed to trial on the lesser offense of attempt to commit the offense of tampering with or fabricating evidence.

The indictment charged that the Defendant "did unlawfully and feloniously attempt to alter, destroy, or conceal a substance or thing believed to be cocaine, with the intent to impair its availability as evidence in an investigation, knowing that an investigation was in progress, in violation of T.C.A. § 39-16-503." Specifically, the Defendant argues on appeal that the State did not prove that Defendant "knew that an investigation . . . was pending, or in progress," an essential element of the offense. <u>See</u> Tenn. Code Ann. § 39-16-503(a).

Regarding this element of the offense, the State proved that Officers Cox and Meeks were dressed in their police uniforms when they came into contact with Defendant on the day of his arrest. Furthermore, the State introduced evidence that the officers sped down the hill in the direction of Defendant on their bicycles, at least one of the officers made eye contact with the Defendant, and the Defendant immediately turned and began walking away quickly. The officers were in their police uniforms, and Officer Cox told the Defendant to "stop" several times prior to Defendant, who was within earshot, entering apartment 522-C. Furthermore, when the Defendant finally turned around at the officer's request inside the apartment, Defendant refused to step toward Officer Cox and stated that the officer did not have the right to stop Defendant or to touch him.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987), perm. to appeal denied, (Tenn. 1987). A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Circumstantial evidence alone may be sufficient to support a conviction. State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, the circumstantial evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with his [or her] innocence and must exclude every other reasonable theory or hypothesis except that of guilt.'" State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987). For circumstantial evidence to provide the sole basis for a conviction, a "web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inferences save the guilt of the defendant beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 613 (Tenn. 1971). Questions concerning the weight to be given circumstantial evidence and the inferences to be drawn from such evidence, are reserved for the jury.

Based upon the evidence presented at trial, and especially upon the comments made by the Defendant that the officer did not have the right to stop him or touch him, the jury could reasonably infer that the Defendant knew that an investigation by the officer was pending or in progress.

The Defendant is not entitled to relief on this issue. Accordingly, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE