# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 2, 2004 Session

## STATE OF TENNESSEE v. AMY DENISE SUTTON

**Direct Appeal from the Circuit Court for Carroll County**
**No. 02CR-1984     Julian P. Guinn, Judge**

---

**No. W2003-01183-CCA-R3-CD  - Filed April 12, 2004**

---

The defendant was convicted of theft of property valued over $1,000. The defendant was sentenced as a Range I standard offender to three years in the Tennessee Department of Correction with one year of incarceration and the remainder to be served on community corrections. On appeal, the defendant challenges the sufficiency of the evidence to support her conviction and raises issues regarding the length and manner of service of her sentence. We remand to delete the reference to the Department of Correction but otherwise affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Remanded for Entry of Corrected Judgment**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee (on appeal); Guy T. Wilkinson, District Public Defender; Billy R. Roe, Jr., Assistant District Public Defender (at trial), for the appellant, Amy Denise Sutton.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Becky Keith, a criminal investigator for the Carroll County Sheriff's Department, testified that on March 21, 2002, she investigated a report of a stolen ATV found at 7405 Highway 70 in Cedar Grove, Tennessee. Investigator Keith stated she was accompanied by Investigator Andy Dickson and Trooper Roger Wood of the Criminal Investigation Division of the Tennessee Highway Patrol. Investigator Keith and the other investigators proceeded to the address, the residence of Scott Sutton and his fiancé, Wanda Maness. Investigator Keith testified the VIN number of the ATV was processed, and the owners were discovered to be Keith and Pamela Canady.

Scott Sutton, the defendant's brother, testified that he and the defendant had a discussion about a week prior to March 21 as to his desire to purchase a four-wheeler for his son's upcoming

birthday. The defendant indicated that "she might know somebody" who could get him one for about $500. However, he testified that his sister was not the person who gave him the ATV on March 21. He said he got it from Sam Rhodes. However, Sutton admitted giving a sworn statement shortly after the ATV was discovered at his residence, in which he stated that he obtained the ATV from his sister, the defendant. Sutton also testified he drove the ATV from his sister's residence to his home. He stated the reason he said in his prior sworn statement that he got the ATV from his sister was "I didn't know at the time it was stolen. Then, when I found out it was stolen, then I told them [the ATV was not obtained from his sister]." Sutton testified that at the time he picked up the ATV from the defendant's house, Sam Rhodes was dating the defendant. He stated Rhodes was currently incarcerated for theft, but he was unaware of that at the time he obtained the ATV.

Wanda Lynn Maness testified that she was living with Sutton at the residence where the investigative team located the ATV. Maness stated Sutton obtained the ATV from the defendant's house.

Pam Canady testified she and her husband purchased the ATV in question eighteen months prior to its theft for approximately $4,500. She stated it was in excellent condition and valued over $1,000. She stated she and her husband did not give anyone permission to get the ATV.

Trooper Wood testified he took a sworn statement from the defendant. Trooper Wood read into evidence the defendant's statement, in which she claimed to have noticed the ATV for sale for $500 at a trailer park in Lexington, Tennessee. The defendant told the trooper that she paid for it at that time and loaded it into the back of her truck. The defendant, in her statement, identified the ATV as being located "between the fourth and fifth trailers" on the left at the time of the sale. She further identified the seller as a "white male about nineteen or twenty with a shaved head, about five-eight or five-nine, average build," named "Michael Stanford." Trooper Wood testified he located the trailer park the defendant identified but observed only three trailers on the left side. Trooper Wood stated he was unable to find a man named Michael Stanford that fit the description provided by the defendant. He stated that he was unable to find anything to support the defendant's statement about the location of the alleged seller of the ATV.

Investigator Dickson testified he was present during Trooper Wood's initial interview of Scott Sutton. Investigator Dickson testified Sutton said he obtained the ATV from his sister, the defendant.

The defendant testified she obtained the ATV from her boyfriend, Sam Rhodes. She said she paid him $250 and was to pay him another $250. She stated she did not know the ATV was stolen. The defendant testified she lied in her earlier statement because she was scared and trying to protect her boyfriend. She admitted her sworn statement describing her alleged purchase of the ATV at the trailer park was untrue.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence was not sufficient to support her conviction because it is entirely circumstantial and does not exclude every other reasonable hypothesis save the

defendant's guilt. The defendant contends that the evidence adduced at trial points equally to the guilt of either Sam Rhodes, Scott Sutton, or the defendant, since all were in possession of the stolen ATV.

## A. Standard of Review

When an appellant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This court will not reweigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Although the evidence of defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, for this to occur, the circumstantial evidence must be consistent with guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. This court must remember that the jury decides the weight to be given to circumstantial evidence. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)(citation omitted); *see also* State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

## B. Sufficiency Analysis

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

Viewed in the light most favorable to the state, a reasonable juror could have found the defendant knew the ATV was stolen when she exercised control over the ATV and conveyed it to her brother. "[A] jury may infer a criminal defendant's intent from the surrounding facts and circumstances." State v. Lowery, 667 S.W.2d 52, 57 (Tenn. 1984). Possession of recently stolen property, if not satisfactorily explained, is a circumstance from which a juror may draw an inference that the person in possession knew the property had been stolen. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). In the instant case, a reasonable juror could have rejected the defendant's explanation relating to the ATV. Further, the defendant testified she was untruthful in her sworn statement to investigators. The jury could reasonably infer the defendant knew the property was

stolen, and the defendant intended to deprive the owner of possession by selling the vehicle to her brother.

The defendant argues that because Sam Rhodes or Scott Sutton might also be guilty of theft of the vehicle, the evidence does not exclude all reasonable hypothesis save the guilt of the defendant. The argument is misplaced. Multiple defendants may each be convicted of theft of the same property, provided the elements of the offense are proven with respect to each. Our theft statute encompasses "obtain[ing]" or "exercis[ing] control over" the property. Tenn. Code Ann. § 39-14-103. Thus, one who exercises control over stolen property can be found guilty of theft even though that person did not actually steal the property from its owner. The defendant in this case cannot take refuge in the possibility that another person might also be guilty of theft with respect to the ATV. This issue is without merit.

## II. SENTENCING

The defendant raises the following issues concerning her sentence: (1) whether the sentence was excessive; (2) whether the trial court erred in failing to consider and apply alternative sentencing criteria; and (3) whether the trial court used illegal split confinement to enhance the defendant's sentence beyond the permissible confinement time for a Range I standard offender with a release eligibility date of 30%.

### A. Waiver

"When an accused seeks appellate review of an issue in this court, it is the duty of the accused to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal." State v. Bennett, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990). When an appellant contends that the sentence is excessive but fails to include a transcript from the sentencing hearing, the issue of excessive sentences will be considered waived. State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); *see* Tenn. R. App. P. 24(b). Moreover, if the appellate record is inadequate, the reviewing court must presume that the trial judge ruled correctly. Ivy, 868 S.W.2d at 728.

We conclude the defendant has waived any consideration of the length and manner of service of her sentence by failing to include a transcript of the sentencing hearing. However, this shortcoming does not prevent our review of the defendant's contention that the judgment on its face reflects an illegal sentence.

### B. Illegal Sentence

The judgment indicates that the trial court sentenced the defendant to three years in the Tennessee Department of Correction with one year of incarceration and the remainder of her sentence to be served in community corrections. Initially, we observe that a defendant cannot be sentenced to both the Department of Correction and to community corrections. *See* State v. Glen Ray Goodrum, No. W2001-02979-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 4, at *9 (Tenn. Crim. App. Jan. 5, 2004); *see also* State v. Robert J. Williams, No. W2002-02366-CCA-R3-CD, 2003 Tenn. Crim. App.

-4-

LEXIS 366, at *8 (Tenn. Crim. App. Apr. 14, 2003). Thus, that portion of the judgment sentencing the defendant to the Department of Correction must be corrected.

However, a defendant can be sentenced to a period of incarceration in the county jail as a condition of community corrections, provided the period of confinement does not exceed one year. *See* State v. Jimmy D. Johnson, No. 03C01-9602-CC-00062, 1997 Tenn. Crim. App. LEXIS 1037, at ** 6-7 (Tenn. Crim. App. Oct. 16, 1997). Although the defendant concedes she can be ordered to serve time in the county jail before going on community corrections, she contends her jail time cannot exceed her release eligibility date for a three-year sentence. Her release eligibility date is 30% or 10.8 months. *See* Tenn. Code Ann. § 40-35-501(c).

This issue has been the source of some confusion. Our court has consistently held that the jail time may not exceed the release eligibility date for felony sentences of two years or less. *See, e.g.,* Jonathan Thornton v. State, No. E2003-00393-CCA-R8-PC, 2003 Tenn. Crim. App. LEXIS 239, at *7 (Tenn. Crim. App. Mar. 17, 2003); State v. Stephen Michael Ware, No. E2000-01952-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 592, at *10 (Tenn. Crim. App. Aug. 7, 2001). However, these decisions were based upon a special statutory provision relating to two-year or less sentences. *See* Tenn. Code Ann. § 40-35-501(a)(3). The case at bar involves a three-year sentence.

It could be argued our court has applied this same principle to three-year sentences. *See, e.g.,* State v. George C. Peery, III, No. E2002-01682-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 545, at **16-17 (Tenn. Crim. App. June 13, 2003). Regardless, this court has specifically held on at least two occasions that a three-year sentence with one year to be served in confinement in the local jail followed by two years on community corrections is proper. *See* State v. Jerry Waymon Travis, No. W2001-01914-CCA-R3-CD, 2002 WL 31322540, at *2 (LEXIS cite unavailable) (Tenn. Crim. App. Oct. 14, 2002), *perm. to app. denied* (Tenn. 2003); State v. Jeremy Michael Shelton, No. W2000-00457-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 560, at *21 (Tenn. Crim. App. July 20, 2001).

We acknowledge our cases are confusing, and the issue of split confinement may need to be visited by our higher court. Nevertheless, in light of the explicit holdings in Jerry Waymon Travis and Jeremy Michael Shelton, we conclude the three-year sentence with one year of confinement in the county jail followed by two years on community corrections is not an illegal sentence.

## CONCLUSION

Accordingly, we conclude this case should be remanded for correction of the judgment to delete the reference to the Department of Correction. Otherwise, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE