# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 17, 2012 Session

## STATE OF TENNESSEE v. ANTHONY DEWIGHT WASHINGTON

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-1906    Cheryl A. Blackburn, Judge**

---

**No. M2011-02678-CCA-R3-CD- Filed December 10, 2012**

---

The Defendant, Anthony Dewight Washington, appeals from his conviction by a Davidson County Criminal Court jury of possession with intent to sell or deliver more than one-half gram of cocaine in a drug-free zone, a Class B felony. See T.C.A. § 39-17-417(a)(4), (c)(1) (2010) (amended 2012) (possession of cocaine), 39-17-432 (2010) (increased penalty for a drug offense committed in a drug-free zone). The Defendant was sentenced to serve thirty years as a Range III, persistent offender. On appeal, he contends that the evidence is insufficient to support his conviction and that the trial court erred in sentencing him. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Anthony Dewight Washington.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the trial, David Kline of the Metropolitan Nashville Planning Department testified that his office was responsible for preparing maps for various governmental uses. He identified an aerial photograph depicting Bordeaux Gardens Park and its vicinity. The photograph contained computer-generated lines marking the park's boundaries and other lines marking the distance of 1000' from the park's boundaries. On cross-examination, he

acknowledged that he would recognize visually if the 1000' line was off by 500' but that he would not recognize a five-foot variance. He said there was no calibration of the computer to ensure its accuracy in determining the 1000' measurement.

Metro Nashville Police Officer Byron Carter testified that on May 14, 2010, he and several other officers executed a search warrant at a house at 3244 Crow Drive. He marked the address on the aerial photograph, which showed the residence was within the 1000' border surrounding Bordeaux Gardens Park. He said the warrant permitted a search of the house, vehicles, and people at the residence. He said that a metal storm door was closed but a wood door was open and that he saw the Defendant inside. He said that the Defendant closed the wood door and ran. He said the police entered forcibly after trying to open the door and discovering it was locked. He said that before forcing open the door, they knocked and announced that they were police officers. He said that patrol car blue lights were activated in front of the house and that a loud speaker was used to announce that the police were there to execute a search warrant. He said that when they entered the home, the Defendant and a woman stood about five feet from the door. The Defendant's mother was upstairs.

Officer Carter testified that Officer Grindstaff searched the Defendant and found a clear bag containing a white rock weighing 5.7 grams in the Defendant's right front pants pocket. The rock field tested positive for cocaine. Officer Grindstaff also found a clear bag of white powder in the pocket. The powder weighed one and one-half grams and field tested positive for cocaine. Officer Carter said the weights were approximate. He said that a marijuana grinder and a "blunt" splitter were found upstairs where the Defendant's mother was. He said there was marijuana residue inside the grinder. He said Officer Grindstaff found a clear bag of marijuana and a black digital scale with white residue inside the console of a Hummer H3 in the driveway. He said the white residue field tested positive for cocaine. He identified photographs of the items found. He also identified as exhibits the bag containing the rock, the bag containing the powder, the bag containing the marijuana, the marijuana grinder, the blunt splitter, and the scale. He said no crack pipe was recovered during the search.

Officer Carter testified that he recorded a conversation with the Defendant. He did not think the Defendant knew the conversation was recorded. He said that he advised the Defendant of his rights and that the Defendant agreed to talk to him. The recording was played for the jury. In it, Officer Carter inquired whether the marijuana in the Hummer belonged to the Defendant. He told the Defendant he knew that either the Defendant or the Defendant's mother drove the Hummer. When asked whether Officer Carter should charge the Defendant or the Defendant's mother for the marijuana, the Defendant replied that he should be charged. The Defendant also said he should be charged for the marijuana grinder.

The Defendant claimed he drove a Jeep Cherokee to pick up an unidentified woman and said he moved the Hummer to park the Cherokee in front of it. The Defendant asked where the marijuana grinder and blunt splitter were found, and Officer Carter said, "Table right in front of her." The Defendant offered to "give" the police a person called "Trouble." When asked about a gun, the Defendant denied having one. Officer Carter asked which car he should seize, the Hummer or the Cherokee. Officer Carter said he would have to seize both cars unless the Defendant told him which was used to transport drugs. Officer Carter said he told the Defendant he saw the Defendant driving the Hummer the previous day. Officer Carter said the Defendant's mother denied any knowledge of the drugs in the Hummer. When asked about buying drugs from Trouble, the Defendant said he purchased an "eight ball" or four grams of rock cocaine at a time. When asked if he cooked cocaine to make it hard, the Defendant said it was cooked when he bought it and that he just bagged it.

Officer Carter testified that he sometimes said things that were not true when interviewing suspects in order to get information. He said he had not actually seen the Defendant drive the Hummer the previous day. He said an eight ball referred to one-eighth of one ounce or 3.5 grams of cocaine. He said that powder cocaine was sometimes cooked in a pan or microwave to make crack cocaine. He said the Defendant had a microwave in the basement. Officer Carter said Officer Grindstaff was unavailable to testify due to SWAT training.

On cross-examination, Officer Carter testified that the drugs were weighed at the scene with their bags. He said the bag containing rock cocaine had more than one rock but that there were not individual bags for each rock. He said the Defendant claimed to be employed. Officer Carter thought that both cars were registered to the Defendant's mother. He agreed that the Defendant lived in the basement and that the Defendant's mother lived upstairs.

Detective Atif Williams testified that he was part of the team that executed the search warrant on May 14, 2010. He said that as they approached the door, the Defendant saw them and slammed the door. He was present when Detective Grindstaff took a bag of crack cocaine and a bag of powder cocaine from the Defendant's pocket. He did not recall recovering a crack pipe. On cross-examination, Detective Williams stated that he was not involved in searching the entire house but that other officers did. He said that if there was a crack pipe, it was not found and that it was possible they missed finding it. He was not aware of a gun being found in the house.

Tennessee Bureau of Investigation (TBI) Special Agent John Scott, a forensic chemistry expert, testified that he examined the evidence submitted for testing in this case. He said that the rock-like substance weighed 3.9 grams and was cocaine base. The white

-3-

powder weighed seven-tenths of one gram and was cocaine. The plant-like material from two sources had a combined weight of 3.6 grams and was marijuana.

Metro Nashville Police Lieutenant William MacKall testified that he had been a police officer for twenty-one years and had worked in narcotics crimes for about sixteen and one-half years. He said he had investigated both buyers and sellers of narcotics. He was familiar with the manufacturing, packaging, pricing, and use of narcotics. He said that crack cocaine was made by mixing it with a substance such as baking soda and cooking it to remove impurities until it reached a rock form. He said the rock was usually broken into smaller pieces by the person who cooked it and further broken into smaller pieces as it went down the drug distribution network.

Lieutenant MacKall testified that he made street-level purchases of crack cocaine hundreds of times and that a typical purchase for personal use was two-tenths of one gram for $20. He said this quantity was smaller than an eraser head. He said it would be smoked with a crack pipe consisting of a glass stem with a filter on one end, although other items such as miniature wine bottles, soda cans, and car antennas might be used.

Lieutenant MacKall testified that he was not involved in the present case except that he reviewed the evidence at the prosecutor's request. With respect to the exhibit of the bag containing several rocks of crack cocaine, he said that there were some rocks with a street value of $10 to $30. The value of 3.9 grams was $200 to $400. He said he had purchased crack cocaine for $20 both individually bagged and taken from a bag containing multiple rocks. He said the powder cocaine would sell for about $70. He said that digital scales were used to weigh drugs and that he had never known a purchaser to have scales. He said that when he arrested a crack cocaine user, the person typically possessed a glass pipe. He said that crack cocaine users were typically so addicted that they smoked it immediately when they bought it and that it would be unusual for such a person to keep crack cocaine in his or her possession. He said that the longer a person used crack cocaine, the less likely he or she would hold a job. He said it was typical to ask a street-level dealer to identify the person from whom they obtained drugs because the police always tried to get the "bigger fish."

On cross-examination, Lieutenant MacKall testified that he could not "see" a drug user buying large amounts of drugs from a street-level dealer. He said that rocks of crack cocaine and portions of powder cocaine were sometimes individually packaged. He said it was common for drug users who were arrested to want to identify the source of the drugs or to want to work as a confidential informant. He said the amount of crack cocaine involved in this case would have been a "good sized" rock had it not been broken and agreed it would not necessarily fit into a crack pipe. He said that larger amounts of drugs could be smoked with a soda can or a miniature liquor bottle. He was unaware of any such items being found

during the search. He said that at least one other person was in the house and acknowledged it was possible the drugs had been shared between individuals. He said that in his experience, people made powder cocaine into crack cocaine in order to increase its potency. He agreed that it was possible for three people to smoke 3.9 grams of crack cocaine in a weekend but said that every drug user he ever had contact with used drugs as soon as they obtained them.

The Defendant did not offer proof. The jury found the Defendant guilty of possession with intent to sell or deliver more than one-half gram of cocaine in a drug-free zone. The trial court sentenced the Defendant to thirty years, and this appeal followed.

**I**

The Defendant contends that the evidence is insufficient to support his conviction because the proof shows only possession for personal use, not possession with the intent to sell or deliver. The State counters that the evidence is sufficient. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. See State v. Bland, 958 S .W.2d 651, 659 (Tenn. 1997).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. State v. Richmond, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is an offense for a defendant to knowingly . . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4) (2010) (amended 2012). A violation of this nature involving cocaine weighing

one-half gram or more is a Class B felony. Id. at (c)(1). A defendant who commits the offense in a drug-free zone, which includes property within 1000' of a public park, is subject to additional fines and may not be released from prison due to sentence reduction credits before serving at least the minimum sentence for his sentencing range. Id. § 39-17-432 (2010).

Viewed in the light most favorable to the State, the record reflects that the Defendant had 3.9 grams of crack cocaine and seven-tenths of one gram of powder cocaine in his pocket. The crack cocaine was broken into small pieces with street values ranging from $10 to $30. Digital scales like those used by drug dealers were inside a car parked outside the house. When asked who should be charged for the marijuana found in the same car, the Defendant said he should be charged. No crack pipe or other mechanism for smoking crack cocaine was recovered. The Defendant's home was within 1000' of a park. The evidence is sufficient to support the conviction, and the Defendant is not entitled to relief.

**II**

The Defendant contends that the trial court erred in sentencing him to thirty years, the maximum within Range III. The State counters that the trial court correctly sentenced the Defendant. We conclude that the Defendant is not entitled to relief.

In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986). Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Susan Renee Bise, — S.W.3d —, —, No. E2011-00005-SC-R11-CD, slip op. at 29 (Tenn. Sept. 26, 2012).

At the sentencing hearing, the parties did not offer testimony. The court received certified copies of the judgments for the following of the Defendant's prior convictions:

Attempted Sale of a Controlled Substance, Class C felony,
March 25, 1993

Four Counts of Sexual Battery, Class E felony, March 25, 1993

Aggravated Assault, Class C felony, March 11, 1999

Possession of Less than one-half gram of Cocaine with Intent to Sell, Class C felony, March 11, 1999

Sale of Less than one-half gram of a Controlled Substance, Class C felony, June 29, 2000

Sale of More than one-half gram of Cocaine, Class B felony, September 6, 2005

Statutory Rape, Class E felony, May 23, 2005

The presentence report listed numerous other convictions, including misdemeanor drug offenses, motor vehicle and driver's license offenses, reckless endangerment, evading arrest, assault, criminal trespass, possession of a gambling device, gambling, resisting arrest, reckless driving, theft, and contributing to the delinquency of a minor. The Defendant was forty-five years old, and his extensive criminal history spanned his entire adult life. The Defendant had a G.E.D. and completed a substance abuse treatment program while incarcerated in 2006. He was employed at two jobs, a janitorial company and a tent and awning company. He had five children and had weekend visitation with two of them. His parole was revoked in 2007, and his probation was revoked in 1994.

The trial court noted its consideration of the relevant statutory and other factors. It found that the Defendant's sentence should be enhanced based upon his prior criminal history in addition to the offenses used to establish his Range III classification and his failure to comply with conditions of release into the community. See T.C.A. § 40-35-114(1), (8) (2010) (amended 2012). In mitigation, the court found that the Defendant's conduct neither caused nor threatened serious bodily injury. See id. § 40-35-113(1) (2010). In imposing the maximum sentence, the court noted the Defendant's criminal history of numerous offenses that included many felonies in addition to those used to establish his Range III classification.

The Defendant argues that the trial court improperly weighed the mitigating factor and failed to consider as additional mitigating proof his acceptance of responsibility for the marijuana and scales in the Hummer. See id. at (13). With regard to the Defendant's argument about the weight given to the mitigating factor the trial court applied, this court may not reweigh enhancement and mitigating factors relied upon by the trial court. State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). In any event, the court stated that it had

considered the trial evidence in reaching its sentencing determination.  Applying the presumption of reasonableness, we conclude that the Defendant has not shown an abuse of discretion in imposing a thirty-year sentence.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.


_____
JOSEPH M. TIPTON, PRESIDING JUDGE