# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY 1999 SESSION



FILED

July 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **NO. 02C01-9811-CC-00354** |
| Appellee, | ) | |
| | ) | **DYER COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J. STEVEN STAFFORD,** |
| **TERRY WAYNE HAYMON,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Robbery) |

**FOR THE APPELLANT:**

**G. STEPHEN DAVIS**
District Public Defender

**H. TOD TAYLOR**
Assistant District Public Defender
P. O. Box 742
208 North Mill Avenue
Dyersburg, TN  38025-0742

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**R. STEPHEN JOBE**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

**C. PHILLIP BIVENS**
District Attorney General

**JAMES E. LANIER**
Assistant District Attorney General
115 East Market Street
P. O. Drawer E
Dyersburg, TN  38025-2005

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

# O P I N I O N

Defendant, Terry Wayne Haymon, appeals as of right his convictions by a Dyer County jury on three counts of aggravated robbery. Honorable J. Steven Stafford sentenced the defendant to concurrent terms of thirty years as a career offender. The following issues are presented for our review:

1. whether the evidence is sufficient to support the convictions;

2. whether the defendant was improperly denied his right to a preliminary hearing; and

3. whether the defendant was properly sentenced as a career offender.

After a careful review of the record, we **AFFIRM** the judgment of the trial court in all respects.

## FACTS

The state's proof revealed that just prior to midnight on September 25, 1996, Vandy Taylor, Warren Weddle, Lamar Weddle, Ralph Weddle and Jonathan Parr were talking on Parr's front porch. They were approached by two men, one short and one tall, both of whom were dressed in black and wearing masks. The short man had a pistol, and the tall man had a sawed-off shotgun. Taylor and Warren Weddle, fearful of the encounter, fled unscathed. The two gunmen then robbed each of the remaining trio of various amounts of cash.

Taylor, who fled the scene upon seeing the masked gunmen, had a pistol in his pocket. He dropped the pistol while running behind Parr's residence. When he finally recovered the pistol, he noticed the two gunmen running in his direction. Taylor shot at the short gunman several times. Taylor then ran back to Parr's residence frantically exclaiming that he had shot one of the gunmen. Indeed, he had.

Angela Tipton, Parr's neighbor, testified that she observed a short man and a tall man come out of Parr's residence. She, Ralph Weddle, and Parr each

2

testified that the short gunman was the same size as the defendant. Lamar Weddle testified that he knew the defendant and told the authorities that the short gunman looked like the defendant before defendant's name was ever mentioned.

Bernard Cork testified that the wounded defendant knocked on his door around midnight on the night of the robbery, and Cork took him to the hospital. On the way to the hospital, the defendant directed Cork to stop at a particular location so the defendant could pick up some items by the side of the road. The defendant picked up some "balled up" money.

Less than one-half hour after the robbery, the authorities discovered that defendant was being treated for a gunshot wound in the emergency room of the local hospital. The defendant told the authorities that he had been robbed, made to strip and was shot while he escaped. He denied being at Parr's residence. None of his clothing was found at the location described by the defendant.

Defendant gave a subsequent statement in which he claimed he was robbed near Parr's residence when he happened upon the robbery in progress. He stated he was shot as he fled. The authorities recovered the defendant's black pants, black socks and tennis shoes from a culvert where they were hidden.

Based upon the evidence introduced at trial, the jury predictably convicted the defendant on all three counts of aggravated robbery. Defendant now appeals.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to support his convictions due to the lack of a positive identification of the defendant as the perpetrator of the aggravated robberies. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978); nor may this Court substitute its

3

inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, the circumstantial evidence must be consistent with the guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Tharpe, 726 S.W.2d at 900 (quoting Pruitt v. State, 460 S.W.2d 385, 391 (Tenn. Crim. App. 1970)).

While following the above guidelines, this Court must remember that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958); see also State v. Gregory, 862 S.W.2d at 577.

Viewing the evidence in a light most favorable to the state, as we must, the evidence is more than sufficient to support the convictions. Three witnesses testified that the short gunman was similar in size and build to the defendant. Lamar Weddle believed the short gunman was, in fact, the defendant. Taylor shot one of the perpetrators immediately following the robbery, and defendant was treated for a gunshot wound within thirty minutes of the robbery. The defendant's statements were inconsistent. It was for the jury to determine the credibility of the

4

witnesses and the strength of the circumstantial evidence, the latter of which was overwhelming.  The evidence clearly was sufficient to support the guilty verdicts.

This issue is without merit.


## PRELIMINARY HEARING


Defendant contends he was wrongfully deprived of his right to a preliminary hearing.  We respectfully disagree.


### A. Procedural History

At the hearing in the trial court, the facts were undisputed.  Defendant was arraigned on September 30, 1996, in the Dyersburg City Court, which has state jurisdiction.  The preliminary hearing was set for October 4th if the defendant did not make bond; otherwise, the hearing would be November 8th.  The defendant made bond; however, there were no proceedings on November 8th, apparently due to absence of the municipal judge.  The preliminary hearing was rescheduled for November 15th.

On November 15th, the preliminary hearing was rescheduled for January 16, 1997, since the lead investigator had suffered a heart attack.  In the interim, the Dyer County Grand Jury convened in December 1996; however, the state did not seek an indictment.

On January 16, 1997, the defendant did not appear.  The state and defense counsel ascertained that the defendant's parole had been revoked, and he was in custody.  The preliminary hearing was rescheduled for February 10th.

On the morning of February 10th the Dyer County Grand Jury met in regular session and returned an indictment on these offenses.  The preliminary hearing was, therefore, not conducted.

Based upon this evidence, the trial court found no bad faith by the state and denied defendant's motion.

5

## B. Bad Faith Analysis

Tenn. R. Crim. P. 5(e) provides as follows:

> Any defendant arrested prior to indictment or presentment for any offense, whether a misdemeanor or felony, except small offenses, shall be entitled to a preliminary hearing upon the defendant's request therefor, whether the grand jury of the county be in session or not.
>
> If the defendant is indicted during the period of time in which the preliminary hearing is being continued, or at any time before accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of the prosecutor, he may dismiss the indictment upon motion to the court. Provided, however, that no such Motion to Dismiss shall be granted after the expiration of thirty days from the date of the defendant's arrest (emphasis added).

The Tennessee Supreme Court in Moore v. State, 578 S.W.2d 78 (Tenn. 1979), created an exception to the thirty-day rule. In Moore, our supreme court held that:

> the 30-day limitation is applicable only when all parties -- including the defendant, who must act promptly -- have acted in good faith and in compliance with the statute. The failure of the court or the prosecution to exercise good faith and to abide the law operates to toll the statute and preclude its invocation.

*Id.* at 82.

Bad faith may be defined as the state of mind involved when one is not being faithful to one's duty or obligation. State v. Golden, 941 S.W.2d 905, 908 (Tenn. Crim. App. 1996). The duty of a prosecutor is twofold. In one instance, the prosecutor is the guardian of the state's interest. At the same time, the prosecutor is the protector of the rights of the accused. *Id.* At all times, the prosecutor's goal remains, not that he or she shall win a case, but that justice shall be done. *See* Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); State v. Spurlock, 874 S.W.2d 602, 611 (Tenn. Crim. App. 1993).

We agree with the trial court's finding that the state has not exhibited bad faith. The defendant was arrested in September 1996 and, through no bad faith on the part of the state, had not received a preliminary hearing by the time the Dyer County Grand Jury met in February 1997. In fact, the state did not seek an

indictment in December 1996 when the grand jury convened. The state's election to proceed by indictment in February 1997 was not a display of bad faith.

This issue is without merit.

## SENTENCING

Finally, defendant contends he was improperly classified as a career offender. Again, we disagree.

Defendant was convicted on three counts of aggravated robbery, Class B felonies. Tenn. Code Ann. § 39-13-402(b). The proof at the sentencing hearing revealed that defendant had seven prior convictions for Class C felonies committed on different dates. A defendant convicted of a Class B felony who has a combination of six or more Class A, B or C prior felony convictions is a career offender. Tenn. Code Ann. § 40-35-108(a)(1). Thus, defendant's seven prior Class C felony convictions qualify him as a career offender.

This issue is without merit.

## CONCLUSION

Based upon our review of the record, we find no error committed by the trial court and **AFFIRM** the judgment in all respects.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOHN H. PEAY, JUDGE**

_____
**THOMAS T. WOODALL, JUDGE**