# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 2000 Session

## STATE OF TENNESSEE v. DAMON THEODORE MARSH

**Appeal from the Criminal Court for Bedford County**
**No. 14091   Charles Lee, Judge**

---

### No. M1999-01879-CCA-R3-CD - Filed September 29, 2000

---

Defendant, Damon Theodore Marsh, appeals his conviction for second degree murder, for which he received a sentence of 23 years and 6 months.  On appeal, the defendant raises the issue of sufficiency of the evidence to support his conviction.  We conclude that the issue raised by the defendant in this appeal is without merit.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH, J., AND L. TERRY LAFFERTY, SENIOR J., joined.

Andrew Jackson Dearing, III, Assistant District Public Defender, Fayetteville, Tennessee (on appeal), and William C. Roberts, Jr., Shelbyville, Tennessee (at trial), for the appellant, Damon Theodore Marsh.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; William Michael McCown, District Attorney General; and Robert G. Crigler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Defendant, Damon Theodore Marsh, was convicted by a Bedford County jury of second degree murder and received a sentence of 23 years and 6 months.  The defendant challenges the sufficiency of the evidence.  Finding the evidence sufficient to support the guilty verdict, we affirm the judgment of the trial court.

# FACTS

The state's proof showed that on the afternoon of October 3, 1996, the victim, Rochelle Regina Marable, and the defendant were at the victim's apartment. Around 4:00 p.m. that afternoon, the victim's mother went to the victim's apartment to pick up the victim's three-year-old son. The victim was still alive at that time.

The following morning the victim's mother returned to the victim's apartment with the victim's son, but no one answered the door. Later the victim's brother, a Shelbyville police officer, went to check on the victim. When the victim's brother arrived at the apartment, he found the front door locked, the back door unlocked, and no signs of forced entry. After entering the victim's apartment, he found the deceased victim lying on the couch covered in blood. The victim had been beaten and stabbed numerous times.

Officers subsequently discovered that a trash can just outside the victim's apartment had blood on its lid. When the officers went through the contents of the trash can, they found a knife and a beer bottle. Both the knife and the beer bottle had the victim's blood on them.

On October 5, 1996, the defendant was questioned about the victim's murder. The defendant said that he had been at the victim's apartment on the afternoon of October 3rd, and they had been smoking crack cocaine that afternoon. The defendant stated, however, that he left the victim's apartment around 5 p.m. prior to her death.

The defendant voluntarily returned less than an hour later and gave a second statement to the officers. During the second statement the defendant stated that he left the victim's apartment to buy more crack cocaine and returned about an hour later, finding the victim. The defendant stated he was not sure the victim was dead and lifted her. He said he then panicked and fled because he was afraid the police would think he murdered the victim, and because he had crack cocaine in his possession. He further stated that when he left the apartment, he threw away a beer bottle in the trash can outside the apartment.

Testimony established that on the evening the victim was murdered, the defendant was wearing a pair of brown work boots and a pair of blue jeans with blood on them. Further, the defendant was loaned a jacket by a friend on the morning the victim was murdered. A jacket similar to the one loaned to the defendant was later found in a dumpster near the victim's apartment with human blood on it.

A state expert on blood pattern interpretation examined the defendant's blue jeans and boots. There were 385 blood spatters on these items of a medium velocity impact that were consistent with a beating or stabbing. The expert testified that the blue jeans and boots had to be at the scene of the beating or stabbing, and that the blood stains were inconsistent with stains that would result from merely picking up a bloody body.

The defendant attempted to establish through other witnesses that he was not the perpetrator, and that there was another suspect who could have committed the offense. He further attempted to establish that the blood found on his blue jeans and boots could have gotten there when he lifted the victim's body.

The defendant was tried by a Bedford County jury and convicted of second degree murder.

## SUFFICIENCY OF EVIDENCE

The defendant contends that the circumstantial evidence presented at trial was not sufficient to support his conviction for second degree murder. We disagree.

A.      Standard of Review

Although the evidence of defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, for this to occur, the circumstantial evidence must be consistent with guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900.

Great weight is given to the jury verdict in a criminal trial; it accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Therefore, while following the above guidelines, this Court must remember that the jury decides the weight to be given to circumstantial evidence. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)(citation omitted); *see also* State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

B.      Analysis

Second degree murder is defined as "a knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Viewing the evidence in a light most favorable to the state, the evidence is sufficient to show a knowing killing by the defendant.

The defendant made inconsistent statements to the police. In the first statement the defendant did not mention returning to the victim's apartment after he left at 5:00 p.m. Instead, the defendant claimed he went elsewhere. In the second statement the defendant admitted he returned and found the deceased victim.

The defendant in his second statement said he threw away a beer bottle in the trash can as he

-3-

left the apartment. Officers found a beer bottle and a knife in the trash can. Both had the victim's blood on them.

On the evening the victim was murdered, the defendant was seen wearing blue jeans and work boots, both of which had blood on them. The blood found on the blue jeans and right boot was the victim's blood. Although the defendant's theory was that this blood got on him when he lifted the victim to see if she was alive, testimony by an expert witness for the state established that the medium velocity impact blood spatters could not have gotten on the defendant's pants and boots as he claimed. The jury obviously chose to believe the state's expert witness and to disbelieve the defendant's theory. This was the jury's prerogative, and we are not at liberty to conclude otherwise.

## CONCLUSION

We conclude that while the evidence was circumstantial in this case, it was clearly sufficient to support the defendant's conviction for second degree murder. The judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE