# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs January 15, 2013

## STATE OF TENNESSEE v. WILLIAM WALKER

**Appeal from the Circuit Court for Maury County**

**No. 20815 Hon. Jim T. Hamilton, Judge**

_____

**No. M2012-01005-CCA-R3-CD - Filed March 21, 2013**

_____


Appellant, William Walker, was convicted by a Maury County Circuit Court jury of possession of cocaine over 0.5 grams with intent to sell, a Class B felony, and possession of drug paraphernalia, a Class A misdemeanor. *See* Tenn. Code Ann. §§ 39-17-417; 39-17-425. Appellant received a sentence of 12 years for possession of cocaine for sale and 11 months, 29 days for possession of drug paraphernalia, to be served concurrently. On appeal, appellant contends that the evidence at trial was insufficient to support his convictions. We affirm appellant's convictions and the court's judgment.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**


PAUL G. SUMMERS, Sr.J., delivered the opinion of the Court in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, Jr., J., joined.


Richard C. Richardson, Columbia, Tennessee, for the Defendant-Appellant, William W. Walker.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; T. Michael Bottoms, District Attorney General; Kyle E. Dodd, Assistant District Attorney General for the Appellee, State of Tennessee.

# OPINION

## I.  FACTS AND BACKGROUND

At the trial, Michael Pruitt, confidential informant, testified that on April 4, 2011, he drove a person by the name of "Cuz" to 205 Campbell Street in Columbia, Tennessee, in order for "Cuz" to purchase crack cocaine.  He stated that while at the residence, Pruitt observed the appellant weigh out the drugs and give them to "Cuz."  Pruitt stated that he saw the appellant discuss the amount of drugs weighed for the transaction with a person who was in a wheelchair.

After leaving the residence, Pruitt contacted Investigator Jason Dark with the Columbia Police Department and informed him of the location where the cocaine was being sold.  Later in the evening, Pruitt met with Investigator Dark and was shown a photograph of appellant, which Pruitt identified as the individual who sold his companion the crack.

On cross-examination, Pruitt admitted to numerous prior criminal convictions, including theft by fraud and criminal impersonation.  Pruitt also admitted that he had previously been addicted to cocaine, but denied any cocaine use since 2009.  While he initially denied being compensated for giving the information to Investigator Dark, Pruitt later admitted that he had been paid by Investigator Dark for the information.

Angela Pollock testified that she was the resident of the trailer at 205 Campbell Street.  She stated that she had been in a relationship with appellant, but the relationship ended in October of 2011.  She stated that on April 4, 2011, appellant arrived at her home with Jason Pillow, who was unable to move his arms or legs.  Ms. Pollock described that appellant carried Mr. Pillow into her home and placed him into his wheelchair.  She testified that appellant then took a bag of crack cocaine from a blue bag and placed it into her end table.

In her testimony, Ms. Pollock stated that people came to her home and told appellant and Pillow what they wanted. Pillow told appellant how much crack should be weighed out.  Appellant weighed the drugs; passed the drugs to the purchaser; received the purchase money; and then placed the money in Mr. Pillow's wallet.  According to her testimony, Ms. Pollock witnessed drug transactions occur approximately seven or eight times on April 4, 2011; each time during the transaction,  appellant was the sole person who handled the drugs and money.  Ms. Pollock also testified that a small amount of crack residue and a glass pipe that were found in her bedroom had been brought to the home by appellant.

On cross-examination, Ms. Pollock admitted that she had pending charges of possession of cocaine and marijuana for sale and possession of drug paraphernalia arising from the drug sales on the day at issue but that there had been no disposition of those charges. Ms. Pollock also admitted that several days prior to her testimony she and her attorney met with the Assistant District Attorney to discuss her testimony at trial. She denied that there had been any type of deal made between the prosecutor and her in exchange for her testimony.

Ms. Pollock admitted that she gave the police officers three different stories regarding the ownership of the drugs when they arrived to serve the search warrant on April 4, 2011. Her initial story was that she did not know drugs were present in the home. She then stated that once the police had found the crack cocaine, she told the police that the drugs belonged to an unknown black male who had already left the premises. When additional drugs were found, Ms. Pollock told the police that the drugs belonged to Mr. Pillow, who had already left the scene.

Investigator Jason Dark testified that he received a call from Mr. Pruitt informing him of a large amount of crack cocaine at the Pollock premises. Investigator Dark stated that, after receiving the call, he procured a search warrant for the home, which was then served at 11:17 p.m. on April 4, 2011. He stated that Mr. Pruitt described the appellant and Mr. Pillow to him after the sale. Investigator Dark also said that Mr. Pruitt told him that appellant was the person who sold the cocaine.

Investigator Dark testified that Mr. Pillow was unable to move his arms or legs. According to his testimony, when Investigator Dark attempted to question Mr. Pillow, Mr. Pillow had a blank stare in his eyes, and his head began to shake. Investigator Dark then called the EMS because he was concerned that Mr. Pillow was having a seizure.

After serving the search warrant, Investigator Dark met with Pruitt. Investigator Dark showed Mr. Pruitt a picture of appellant that was taken with his cell phone after the search and asked Pruitt if he recognized the person. Mr. Pruitt positively identified the appellant as the person who sold the crack cocaine.

During cross-examination, Investigator Dark admitted that Ms. Pollock gave him three different stories of who owned the drugs during the service of the search warrant, none of which implicated appellant. Investigator Dark also admitted that the appellant did not have any sizeable amount of cash, weapons, drugs, paraphernalia or other indicia of drug sales on his person at the time of arrest. While there was a phone found on the scene, there was never a determination of who owned the phone or whether there were any texts or other messages that were related to drug dealing on the phone. There were

never any fingerprints or DNA samples collected from the drug baggies, scales or other drug-related equipment.

Also testifying was Investigator Brian Gray of the Columbia Police Department and Special Agent Jennifer Sullivan of the Tennessee Bureau of Investigation. Investigator Gray's testimony was consistent with Officer Dark's. Special Agent Sullivan testified as an expert identifying the drugs as cocaine base and confirming the weight of the drugs.

Appellant did not testify at the trial, nor did the defense present any witnesses. At the conclusion of the trial, the jury found the appellant guilty on both the possession of cocaine for sale and possession of drug paraphernalia charges. This appeal followed.

## II.  LAW AND ANALYSIS

Appellant contends that the evidence at trial was insufficient to support either the possession of cocaine for sale or possession of drug paraphernalia convictions. He argues that the only proof by the state was that the appellant was present in the home where the drugs and paraphernalia were found. Appellant also argues that any actions of appellant were simply to facilitate Mr. Pillow regarding any drug transactions because no proof showed any intent by appellant to sell any of the drugs found at the scene. The state counters that the evidence is sufficient to support the convictions. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). We do not re-weigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

"'A crime may be established by direct evidence, circumstantial evidence, or a combination of the two.'" *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005)(quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1998). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is

the same whether the conviction is based on direct or circumstantial evidence." *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265 (Tenn. 2009)).

Relevant to this case, "[i]t is an offense for a person to knowingly… [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). Also relevant to the case is Tenn. Code Ann. § 39-17-425(a)(1), which states, "[I]t is unlawful for any person to use, or possess with the intent to use, drug paraphernalia to…. process, prepare, test… pack… a controlled substance…."  A person acts knowingly who is aware of the nature of his or her conduct or that the circumstances exist. Tenn. Code Ann. § 39-11-106(a)(20).

In a light most favorable to the state, the prosecution offered testimony from multiple witnesses that appellant took the orders for the cocaine; weighed the cocaine; accepted the purchase money; and then delivered crack cocaine to at least eight people. Appellant's argument that there was no proof on this issue is controverted by both the record and appellant's own brief.  While there may be questions of credibility regarding the testimony of Mr. Pruitt and Ms. Pollock, it is not the place of this Court to question the credibility of witnesses. These questions were resolved by the jury.

Appellant's argument that the proof can only support a conviction for facilitation of drug sales because the drugs at issue were "owned" by Mr. Pillow is likewise misplaced.  While there is ample proof from which a rational trier of fact could find that appellant was the owner of the drugs, whether appellant was the "owner" of the drugs or sold drugs that were "owned" by someone else is a distinction without a difference. There is no requirement that one must "own" the controlled substance or paraphernalia in order to be convicted under either Tennessee Code Annotated sections § 39-17-417 or 425.  It is only required that someone "possess" the substance or items.

"'Possession' may be either actual or constructive." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn.2001). Constructive possession occurs when a person knowingly has "'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)(quoting, *United States v. Craig*, 522 F.2d 29, 32 (6th Cir. 1975)). "'[C]onstructive possession is the ability to reduce an object to actual possession.'" *Williams,* 623 S.W.2d at 125 (quoting, *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979)).

There is ample proof for the purposes of conviction that appellant "possessed" the cocaine and scales.  Appellant's brief concedes that he took the cocaine from the blue

bag; weighed the drugs for transactions; accepted money for transactions; and delivered the drugs to the customer.  The state put on proof that the alleged "owner" of the cocaine was unable to move his arms or legs.  Even if it is assumed that appellant did not "own" the drugs or the scale, there was sufficient proof at trial from which a rational trier of fact could find that appellant exercised possession and control over the drugs and scales in order to support the convictions.

## III.   CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the appellant's convictions for possession of cocaine with intent to sell and possession of drug paraphernalia.

_____
PAUL G. SUMMERS, Senior Judge