IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2013

**STATE OF TENNESSEE v. JOSEPH FLOYD**

**Appeal from the Criminal Court for Shelby County**
**No. 10-03845    Lee V. Coffee, Judge**

**No. W2011-01796-CCA-R3-CD  - Filed June 14, 2013**

The Defendant, Joseph Floyd, was convicted by a Shelby County Criminal Court jury of two counts of driving under the influence (DUI), Class A misdemeanors, and reckless driving, a Class B misdemeanor.  *See* T.C.A. § 55-10-401, 55-10-205 (2012).  The trial court merged the DUI convictions.  The Defendant was sentenced to concurrent terms of eleven months and twenty-nine days for the DUI conviction and seven days for the reckless driving conviction, all suspended but seven days.  On appeal, he contends that the evidence is insufficient to support his convictions.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and ROGER A. PAGE, JJ., joined.

Terita Hewlett Riley (on appeal) and Paul James Springer, Sr. (at trial), Memphis, Tennessee, for the appellant, Joseph Floyd.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; and Amy P. Weirich, District Attorney General; and Susan L. Taylor and Edith J. Sellers, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a traffic accident involving injuries on December 20, 2009, in which the Defendant was arrested for driving under the influence and reckless driving.  At the trial, Mark Scales testified that on that day at 6:00 or 7:00 p.m., he drove his Jeep into the intersection after the light turned green and that his Jeep was hit by a van.  He said the van traveled from the opposite direction and attempted to make a left-hand turn across his lane of traffic.  He said the van did not stop and hit him on the front driver's side door.

Mr. Scales testified that "Brian," a good samaritan, came to his aid. He said that he asked Brian who was driving the van and that the Defendant, who was standing next to Brian, turned and walked away. He denied the Defendant's talking to him but admitted the Defendant asked Brian if Mr. Scales was okay. He denied hearing the Defendant say anything else after the accident.

Mr. Scales testified that the air bag deployed during the accident and that he suffered a fractured right leg, an injury to his left leg, and a cut above his eye. He was hospitalized overnight and was unable to work for two or three weeks. He said that after he returned to work, fluid formed in his leg, preventing his working for another three weeks.

On cross-examination, Mr. Scales testified that the front driver's side door of his Jeep was damaged and that the door was pried open by emergency personnel. He agreed the cut to his face was caused by the air bag. He said the impact of the accident pushed his legs under the steering wheel. He said Brian approached the driver's side door. He did not know how much time elapsed between Brian's arriving and the Defendant's approaching his Jeep. He denied seeing anyone get out of the van after the accident. He said that he saw the van three or four days after his release from the hospital and that the front and driver's side of the van were damaged.

Mr. Scales testified that he did not see anyone driving the van. He agreed he saw a man, who was 6'2" or 6'3" tall and heavyset, standing near the passenger side of the van but denied seeing his face. He did not recall whether the van's doors were open.

On redirect examination, Mr. Scales testified that he noticed the Defendant's eyes were red when he approached his Jeep. He said the Defendant was about five to seven feet away. He denied hearing the heavyset man say anything to the Defendant.

Brian Hill testified that he was in the turn lane when the accident occurred and that he saw a head-on collision. He said that the van was turning left at the intersection and that Mr. Scales's Jeep was traveling straight through the intersection. He said he left his car and walked to Mr. Scales's Jeep because the front end of the Jeep was "crushed." He said he also checked on the Defendant, who was in the driver's seat. He said a "big guy" was in the passenger seat. He said the passenger was able to get out of the van. He said that the driver's side door would not open and that the Defendant got out through the passenger side door. He said the Defendant approached Mr. Scales's Jeep to check on Mr. Scales. He said he heard the Defendant say to the passenger that the passenger was driving. He said that when he attempted to open the Defendant's door, he smelled alcohol coming from the Defendant and the passenger. He said the Defendant and the passenger were "belligerent," and he returned to Mr. Scales.

-2-

Mr. Hill testified that the Defendant did not have any injuries, that the Defendant walked over to Mr. Scales's Jeep, and that the Defendant began walking down the sidewalk away from the accident. He said that he told a police officer that the Defendant was involved in the accident and that the officer stopped the Defendant. He said that after the Defendant was returned to the scene, the Defendant might have sat in the passenger seat of the van.

On cross-examination, Mr. Hill testified that he did not know whether anyone had called 9-1-1 when he approached Mr. Scales, although he told Mr. Scales that 9-1-1 had been called. He said someone who also saw the accident approached Mr. Scales, and he knew it was not the Defendant. He thought the Defendant and the passenger were wearing their seat belts but did not think the air bags deployed. He denied the Defendant and the passenger spoke to him. He said the van turned in front of Mr. Scales and agreed it was not a head-on collision. He agreed the passenger side of the van was damaged and said the damage was all over the van.

Mr. Hill testified that the passenger in the Defendant's van told him and tried to convince him the passenger was driving, that the passenger bullied him, and that the told the police. He thought it was possible the Defendant got out the driver's side door. He admitted his "adrenalin was pumping" and said the accident occurred two years previously.

On redirect examination, Mr. Hill testified that the Defendant's van struck another vehicle before coming to a stop. He said two older ladies were inside the third car and were not injured but were "shaky." He thought the women drove away. On recross-examination, Mr. Hill stated that although he recalled the firemen prying open one of the car doors, he did not recall which car. He agreed his preliminary hearing testimony stated that the jaws of life were used on Mr. Scales's Jeep. He agreed he did not know what occurred inside the van before he approached to assist the Defendant and the passenger. He said he told the police that the Defendant was driving.

Memphis Police Officer Pierce Hayden testified that he and Officer Farzam responded to the car accident involving Mr. Scales and the Defendant. He said that he spoke to Mr. Scales and that Officer Farzam spoke to the Defendant and the passenger. He said Mr. Scales told him that he was driving through the intersection when he was struck by a van attempting to make a left-hand turn. He said that he spoke to Mr. Hill and that based on their conversation, Officer Farzam left to pick up the Defendant, who was about twenty feet away walking away from the scene.

Officer Hayden testified that although he did not talk to the Defendant, he noticed that he was intoxicated. He said he smelled alcohol coming from the Defendant, who was loud and belligerent. He said the Defendant was arrested after he spoke to the Defendant's

passenger and Mr. Hill. He did not recall hearing the Defendant say anything to Officer Farzam.

On cross-examination, Officer Hayden testified that Mr. Hill was standing beside Mr. Scales's Jeep when he arrived at the scene. He denied knowing the Defendant before the accident but admitted arresting the passenger, Mr. Sims, for aggravated burglary one month before the accident. He said Mr. Sims did not admit to driving the van. He said Mr. Hill told him that the Defendant was driving. He did not recall the Defendant's denying driving the van after his arrest. He denied writing the accident report but admitted it showed that Mr. Sims was not intoxicated. He said he and Officer Farzam discussed Mr. Sims's being intoxicated.

Officer Hayden testified that there were several witnesses at the scene, although he only spoke to one of them. He said Officer Farzam spoke to the Defendant. On redirect examination, he denied attempting to incriminate Mr. Sims. He said Officer Farzam wrote the accident report. On recross-examination, he stated that he did not know the disposition of Mr. Sims's aggravated burglary charge and that he never testified in the case.

Memphis Police Officer Mehdi Farzam testified that he checked on the people in the van when he and Officer Hayden arrived at the scene. He said the driver's seat was empty, but Mr. Sims, a large man, was sitting in the passenger seat. He said Mr. Hill and Mr. Scales told him that the Defendant drove the van. He said that he was told the Defendant was walking down the sidewalk toward a gas station and that he picked up the Defendant.

Officer Farzam testified that the Defendant was intoxicated, was belligerent, and smelled of alcohol. He said the Defendant denied being involved in the accident. He said he spoke to Mr. Sims, who owned the van but denied driving it. He acknowledged preparing the accident report. He said that Mr. Sims was intoxicated and belligerent, and he admitted making a mistake by not noting in the accident report that Mr. Sims was intoxicated. He denied hearing the Defendant and Mr. Sims talk. He identified a photograph of the Defendant as he appeared the night of the accident and said the Defendant did not have any injuries.

On cross-examination, Officer Farzam testified that he was not involved in Mr. Sims's arrest for aggravated burglary. He agreed Mr. Hill, Mr. Sims, and Mr. Scales identified the Defendant as the driver of the van. He said he concluded that the Defendant was the driver based on Mr. Hill's and Mr. Scales's statements. He did not know whether the keys were in the van's ignition when he arrived at the scene. He denied photographing the Defendant the night of the accident and requesting crime scene investigators to inspect the scene.

-4-

Officer Farzam testified that he did not obtain a written statement from Mr. Sims because he was not capable of giving one. He said Mr. Sims was concerned about getting his property from the van. He said that when he approached the van, Mr. Sims was wearing his seat belt and got out to provide his driver's license. He did not recall testifying at the preliminary hearing that Mr. Sims approached him. He denied that he and Officer Hayden discussed Mr. Sims's aggravated burglary arrest. He denied photographing the scene and did not recall ever photographing an accident scene.

Officer Farzam testified that he did not recall testifying that Mr. Sims said that Mr. Sims drove the van at "one point in time." He said that although the Defendant was confused and dazed, he did not know if the Defendant's behavior was from intoxication or from the accident. He said, though, the Defendant did not have any injuries.

A recording of Officer Farzam's preliminary hearing testimony was played for the jury but is not included in the record. His testimony showed that Mr. Sims stated that he drove the van. He denied being asked at the preliminary hearing if Mr. Sims said he was the passenger and if Mr. Sims ever denied driving the van. He agreed his previous testimony stated that the Defendant said he was unsure whether he was driving the van. He said the Defendant was drunk and confused. On redirect examination, he stated that it was possible he remembered some details during his testimony that he did not remember at the time of the accident.

Memphis Paramedic Adam Stafford testified that he treated Joseph Floyd at the scene, although he could not identify him in the courtroom because of the number of patients he had treated. He said that Mr. Floyd was walking around when he arrived, that he smelled of alcohol, and that he had no obvious injuries or complaints. He placed Mr. Floyd in a cervical collar and placed him on a stretcher, which protocol required. He said he was told the Defendant was the driver of the van but could not recall if he learned the information from the Defendant or the police. He said that there was mild to moderate damage to the front and passenger side of the van and that the air bags deployed.

On cross-examination, Mr. Stafford testified that protocol required his putting Mr. Floyd in a cervical collar because it was possible Mr. Floyd suffered trauma that he could not diagnose at the scene. On redirect examination, he agreed that intoxication might explain Mr. Floyd's confusion and said that Mr. Floyd's vital signs were all within normal limits and that he had no obvious injuries.

Memphis Police Officer Cornell McKinnie testified that when he arrived at the scene, the ambulance was ready to take the Defendant to the hospital and that he followed the ambulance. He said that at the hospital, he heard the Defendant say, "I shouldn't have been

driving," and that the Defendant did not know he was within hearing distance. He said that after the Defendant was released, the Defendant was taken to another location to perform field sobriety tests, which were administered by another officer. He said the Defendant was uncooperative and attempted to talk instead of perform the tests. Although he did not recall much about the Defendant's performance on the tests, he recalled that the Defendant did not perform the walk-and-turn test correctly.

Officer McKinnie testified that the Defendant did not complain about suffering injuries from the accident. He did not recall the length of time he and the Defendant were at the hospital but said it was more than one hour. He said that although he did not see any visible injuries, the Defendant smelled of alcohol. He concluded that the Defendant was under the influence of an intoxicant that impaired his ability to drive. He said that although the Defendant declined to take a breathalyzer test, the Defendant's blood was taken as required by law because the accident involved injuries to Mr. Scales.

On cross-examination, Officer McKinnie testified that he arrived at the scene thirty minutes after the accident. He denied taking the Defendant to the hospital in his police car and seeing the medical staff examine the Defendant's head. He denied asking the Defendant questions but said the Defendant was talkative. He agreed the arrest ticket did not include the Defendant's stating he was driving the van. He said that although Officer Hayden prepared the arrest ticket, he did not know why Officer McKinnie failed to mention the Defendant's statement at the hospital. On redirect examination, he stated that the arrest ticket was already prepared when he reviewed it and that another officer signed his name.

Memphis Police Officer Bobby Alston testified that he administered the Defendant's field sobriety tests. He said the location where the Defendant performed the tests was well lit, flat, and had lines on the ground. He denied the Defendant complained about injuries. He said the Defendant performed the horizontal gaze nystagmus test and the walk-and-turn test. He requested the Defendant perform the one-leg stand test, but the Defendant said he was unable to perform it because of a previous injury. He said the Defendant also complained of flat feet, which prevented his performing the test. He did not recall the Defendant's mentioning his head.

Officer Alston testified that he smelled a strong odor of alcohol coming from the Defendant, that his eyes were watery, and that he had slurred and incoherent speech. He said the Defendant had difficulty standing and answering simple questions. He said the Defendant was argumentative, confused, inattentive, and talkative. He said that during the walk-and-turn test, the Defendant lost his balance, stopped while walking, failed to touch heel to toe throughout the test, stepped off the line, used his arms for balance, lost his balance during the turn, turned to the right when he should have turned to the left, and took too many

steps. He concluded that the Defendant failed the walk-and-turn test. He said that during the one-leg stand test, the Defendant swayed and used his arms for balance. He concluded that the Defendant was under the influence of alcohol or drugs. He said he observed the Defendant at 8:00 p.m., about one and one-half hours after the accident. He said that after the Defendant was arrested and taken to the police station, a blood sample was taken.

On cross-examination, Officer Alston testified that he knew the Defendant was taken to the hospital for treatment, that the Defendant attempted to tell him that he was a disabled veteran with thirty percent disability, and that he disregarded the Defendant's statement. He said, though, that the Defendant did not claim an inability to perform the field sobriety tests. He agreed the Defendant asked multiple times where the driver of the car was. He said he did not know what happened at the scene.

Officer Alston testified that he read the implied consent form to the Defendant, although the Defendant was confused and unable to answer simple questions. He said he only asked the Defendant whether he would consent to the breathalyzer test because the law required a blood test with Mr. Scales being injured in the accident. He said he mistakenly noted on the implied consent form that the Defendant refused a blood test. He said that although the Defendant did not verbalize his refusal to take the breathalyzer, the Defendant shook his head, which Officer Alston interpreted as a refusal. He agreed that the Defendant later said he would agree to take the test if Officer Alston had witnesses, but the police did not provide witnesses. On redirect examination, Officer Alston stated that the law did not allow him to forgo reading the implied consent form simply because a driver was too drunk to understand the form. He agreed he was unsure whether he asked the Defendant to submit to a blood test.

Upon this evidence, the jury convicted the Defendant of two counts of DUI and reckless driving. The trial court merged the DUI convictions and sentenced him to concurrent terms of eleven months and twenty-nine days for the DUI conviction and seven days for the reckless driving conviction, all suspended but seven days. The court found that the Defendant was offered a breathalyzer test and that the Defendant refused to submit to the test. The court found that the Defendant violated the implied consent law and revoked his driver's license for one year. This appeal followed.

The Defendant contends that the evidence is insufficient to support his convictions for DUI and reckless driving. He argues that the evidence failed to show that he was driving the van at the time of the accident or that he was driving the van while under the influence of an intoxicant. The State responds that the evidence is sufficient to support his convictions. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S .W.2d 651, 659 (Tenn. 1997).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Identity may be established with circumstantial evidence, and the "jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence. . . .'" *Id.* (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

Relevant to this appeal,

[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways on the state, or on any streets or alleys, . . . while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous systems or combination therefore that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess; or

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more.

T.C.A. § 55-10-401 (2012). Reckless driving is committed when "any person who drives any vehicle in willful or wanton disregard for the safety of persons or property[.]" *Id.* § 55-10-205 (2012). Willful and wanton disregard requires "[a] heedless and reckless disregard for another's rights, with the consciousness that the act . . . may result in injury to another." *Burgess v. State*, 369 S.W.2d 731, 733 (1963).

In the light most favorable to the State, the record shows that Mark Scales drove his Jeep into an intersection and was hit by a van traveling from the opposite direction that attempted to make a left-hand turn across Mr. Scales's lane of traffic. Mr. Hill approached the van and saw the Defendant in the driver's seat and Mr. Sims in the passenger seat. Mr. Hill attempted to open the driver's door but was unable to do so. The Defendant and Mr. Sims both got out through the passenger door. Mr. Hill smelled alcohol coming from the Defendant, who was belligerent. Mr. Hill testified that the Defendant approached Mr. Scales's Jeep, that Mr. Scales asked who was driving the van, and that the Defendant began walking away from the scene.

Officer Farzam said that the Defendant was belligerent and smelled of alcohol and that he concluded the Defendant was intoxicated. Officers Hayden and McKinnie also said the Defendant smelled of alcohol and concluded that he was intoxicated. Paramedic Adam Stafford testified that Mr. Floyd was walking around when he arrived at the scene, that he smelled of alcohol, and that he had no obvious injuries or complaints. Mr. Stafford followed standard treatment protocol and said that Mr. Floyd's vital signs were all within normal limits. Officers McKinnie and Alston testified that the Defendant did not complain about suffering injuries from the accident.

At the hospital, Officer McKinnie overheard the Defendant state that he should not have been driving the van. During the field sobriety tests, the Defendant was uncooperative and attempted to talk to Officer Alston rather than perform the tests. Officer Alston smelled a strong odor of alcohol coming from the Defendant. The Defendant had watery eyes, slurred and incoherent speech, and had difficulty standing and answering simple questions. The Defendant was argumentative, confused, inattentive, and talkative. Officer Alston testified that during the walk-and-turn test, the Defendant lost his balance, stopped while walking, failed to touch heel to toe throughout the test, stepped off the line, used his arms for balance, lost his balance during the turn, turned to the right when he should have turned to the left, and took too many steps. Officer Alston concluded that the Defendant failed the walk-and-turn test. He said that during the one-leg stand test, the Defendant swayed and used his arms for balance. He concluded that the Defendant was under the influence of alcohol or drugs. Officer Alston observed the Defendant about one and one-half hours after the accident. We conclude that the evidence sufficiently established that the Defendant was driving the van at the time of the accident and that he was driving while under the influence

of alcohol or an intoxicant.  We also conclude that the evidence sufficiently established that the Defendant committed the offense of reckless driving.  The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE