IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2012

## STATE OF TENNESSEE v. MICHAEL GLEN WALSH

**Appeal from the Circuit Court for Sevier County**
**No. 15999-III   Rex Henry Ogle, Judge**

--------

**No. E2012-00805-CCA-R3-CD - Filed April 17, 2013**

--------

The Defendant, Michael Glen Walsh, appeals from his convictions by a Sevier County Circuit Court jury for driving under the influence (DUI), second offense, a Class A misdemeanor, violating the implied consent law while his driver's license was revoked for a previous DUI conviction, a Class A misdemeanor, and driving with a revoked license, a Class B misdemeanor. *See* T.C.A. §§ 55-10-401, 55-10-406, and 55-50-504 (2012). He received an eleven-month, twenty-nine-day sentence with 150 days to serve for each of the DUI and the implied consent violation convictions and received a six-month sentence, suspended except for forty-eight hours, for the revoked license conviction, all to be served concurrently. On appeal, the Defendant contends (1) that the evidence is insufficient to support his DUI and implied consent violation convictions and (2) that the trial court erred in sentencing him to serve 150 days. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Edward Cantrell Miller, District Public Defender, and Amber Deaton Haas, Assistant District Public Defender, for the Defendant, Michael Glen Walsh.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James B. (Jimmy) Dunn, District Attorney General; and Gregory C. Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

According to the statement of the evidence, Pigeon Forge Police Officer Lucas Atchley testified that he was trained in administering field sobriety tests and detecting drivers who were under the influence of an intoxicant. He said that while on patrol on June 20, 2010, he observed a blue Mazda with a possible window tint violation and loud music coming from its radio. He said that he activated his car's blue lights to investigate the possible violations and that the Mazda pulled into a parking lot. He said that the Defendant was driving the car and that he asked the Defendant for his driver's license and registration. He said the Defendant was slow to react, was in a "stupor," fumbled for his license and proof of insurance, and handed Officer Atchley his entire wallet. He said that he learned after a license check that the Defendant's driver's license was revoked and that he asked the Defendant to step out of the car.

Officer Atchley testified that the Defendant smelled of alcohol, had bloodshot eyes, and swayed while standing. He said that the Defendant admitted drinking a "couple" of beers during the day, which the Defendant later clarified was four twelve-ounce beers, but that he denied using drugs. Officer Atchley said that he asked the Defendant to perform a series of field sobriety tests. He said the Defendant did not perform the nine-step walk and turn test because of a previous leg injury. He stated that the Defendant said he knew the alphabet, that he asked the Defendant to say the alphabet from the letter "C" to the letter "P," and that the Defendant "jumbled" the letters. He said that he asked the Defendant to perform the finger count test, that the Defendant had difficulty understanding the instructions, that he asked for clarification after beginning the test, and that he performed poorly. Officer Atchley said that he asked the Defendant to perform the one-leg stand test and that the Defendant used his hands for balance and lowered his leg multiple times during the test. He said that based on his observations during the stop, he arrested the Defendant for DUI. He said that during the inventory search of the Defendant's car, he found a cooler with beer. The recording from the police cruiser corroborated Officer Atchley's testimony.

Officer Atchley testified that the Defendant agreed to submit to a Breathalyzer test and that he was taken to the Pigeon Forge Police Department for the test. He said that while waiting to perform the test, the Defendant passed out and appeared to have trouble breathing. He said that the Defendant was taken to the hospital for treatment and that the Defendant refused a chemical test while at the hospital. The blank on the implied consent form indicating the Defendant's agreement to take the test is checked and has the Defendant's signature beside it, but "REFUSED" is written above the arresting officer's signature.

On cross-examination, Officer Atchley testified that the initial reasons for his stopping the Defendant were noise and window tint violations but that after he activated his car's blue

lights, he observed that the Defendant was slow to react to the blue lights. He said the Defendant was slow to respond when asked for his license and registration and appeared to be in a stupor. He agreed that drivers were often given the opportunity to begin field sobriety tests again if they initially performed them incorrectly. He doubted that the Defendant failed the tests due to fatigue from repeating them. He agreed that the Defendant initially agreed to submit to a Breathalyzer test but declined the blood test after being taken to the hospital for a medical issue.

The Defendant testified that he and his wife were driving home to Greene County. He said that it was around midnight when they turned from Wear's Valley Road onto Dolly Parton Parkway in Pigeon Forge and that Officer Atchley was in a second lane turning beside him. He denied that his music was too loud or that his window tint was too dark. He said that he was slow to respond to the officer's blue lights because he did not immediately realize he was the target but that he pulled into the nearest parking lot once he did. He said that if he was slow to respond to the officer's request for his driver's license and registration, it was because he was tired from the day's activities. He admitted having a "few" beers but said that he drank the beers over the course of the day and that he had eaten a couple of meals. He said that he had difficulty with the field sobriety tests because of a previous leg injury and because the parking lot was not level.

The Defendant testified that he thought his driver's license was valid because he had paid a reinstatement fee. He said that he agreed to take a Breathalyzer test but that after he was taken to the hospital, he declined a blood test. He said that he was not intoxicated on the night of the incident.

Upon this evidence, the jury convicted the Defendant of DUI, violating the implied consent law, and driving on a revoked license. The Defendant conceded that this was his second DUI conviction and that his license was suspended for his first DUI conviction. The trial court noted the Defendant's criminal history, driving history, and the dangerous nature of driving intoxicated in a high-traffic area and sentenced him to eleven months, twenty-nine days with 150 days to serve for the second offense DUI. The court found that the statute required forty-five days of the sentence to be served day-for-day but that the Defendant could receive "good time" credits for the remainder. The court also imposed a $600 fine and credited time served. The court sentenced the Defendant to two concurrent terms of eleven months, twenty-nine days with 150 days to serve for the DUI and the implied consent violation convictions. The court sentenced the Defendant to six months, suspended except for forty-eight hours, for driving with a revoked license for the previous DUI and ordered it to run concurrently with the DUI sentence.

**I**

The Defendant contends that the evidence is insufficient to support his DUI and implied consent violation convictions. The State counters that the evidence is sufficient to support the convictions. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S .W.2d 651, 659 (Tenn. 1997).

"'A crime may be established by direct evidence, circumstantial evidence, or a combination of the two.'" *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Relevant to the Defendant's case, it is unlawful for any person to drive a car on any public road and highway while under the influence of an intoxicant that impairs the driver's ability to operate the car safely. *See* T.C.A. § 55-10-401(1) (2012). The implied consent statute states, "Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood." *Id.* § 55-10-406(a)(1). The statute requires that a law enforcement officer who requests a driver submit to an alcohol or drug test must inform the driver that refusal to submit to the test will result in judicial suspension of the driver's license. *Id.* § 55-10-406(a)(3). If a person refuses to submit to the test after being advised of the consequences, the test will not be given, but the person will be charged with violating the statute. *Id.* § 55-10-406(a)(4). A violation of the implied consent law results in criminal penalties if the defendant is driving with a license that is cancelled, suspended, or revoked for a previous DUI conviction. *See id.* § 55-10-406(a)(3).

The Defendant asserts that Officer Atchley did not notice any driving offenses or problems with his driving before initiating the traffic stop. He claims that he was confused as to why he was asked to perform the field sobriety tests and that he responded in a timely fashion to the officer's requests. He also asserts that there was no chemical test showing he was intoxicated. Officer Atchley testified that the Defendant responded slowly when stopping and producing his driver's license and proof of insurance and that he performed poorly on the field sobriety tests. He also testified that the Defendant smelled of alcohol, had bloodshot eyes, and swayed when standing. Further, the Defendant admitted drinking that day. Although the Defendant argues that a leg injury prevented him from successfully completing the field sobriety tests, the leg injury would not relate to his poor performance in reciting a portion of the alphabet or in performing the finger count test. There was no chemical test showing the Defendant was intoxicated because the Defendant refused the test. The jury viewed the recording of the Defendant's responses at the traffic stop and his performance on the field sobriety tests and credited the testimony of Officer Atchley. The record supports the jury's finding. The evidence is sufficient to convict the Defendant of DUI.

The Defendant argues that the evidence is insufficient to support his conviction for violating the implied consent law because he consented to giving a breath sample and was waiting to give the sample when he was taken to the hospital because of a medical emergency. He said that while at the hospital, he declined to give a blood sample. The record includes a consent form signed by the Defendant that advised him of the consequences of declining to submit to the requested tests. This evidence sufficiently supports the jury's finding that the Defendant violated the implied consent law.

## II

The Defendant contends that the trial court erred in sentencing him to serve 150 days of his effective eleven-month, twenty-nine-day sentence. He argues that the court applied three aggravating factors and no mitigating factors and that even with wide discretion, the sentence imposed was unreasonable. The State contends that the trial court did not abuse its discretion and that the sentence was within the range and was not excessive. We agree with the State.

When imposing a misdemeanor sentence, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. T.C.A. § 40-35-302(a) (2010) (amended 2011). We note that the law provides no presumptive minimum for misdemeanor sentencing.

*State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In misdemeanor sentencing, the trial court is not required to place specific findings on the record. *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). However, the trial court must consider the purposes and principles of the Criminal Sentencing Reform Act of 1989. T.C.A. § 40-35-302(d); *see Troutman*, 979 S.W.2d at 274 ("[W]hile the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute.").

Tennessee Code Annotated section 40-35-401(d) (2010) states that appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. The Tennessee Supreme Court recently interpreted the statute to mean in the context of felony sentencing that the length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). More recently, our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). This approach is consistent with the statute, which provides that all sentencing questions under Code section 40-35-401(a) are subject to the same standard for review. Although our supreme court has not addressed whether the abuse of discretion standard with a presumption of correctness applies to misdemeanor sentencing, the court has previously cited Code section 40-35-401(d) regarding the standard of review of misdemeanor sentencing. *See State v. Cooper*, 336 S.W.3d 522, 525 n.4 (Tenn. 2011). As a result, we conclude that abuse of discretion with a presumption of reasonableness is now the standard applying to misdemeanor sentencing.

As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is on the appealing party to show that the sentence is improper. When determining if confinement is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010). A defendant convicted of second offense DUI is required to serve at least forty-five days in confinement. T.C.A. § 55-10-403(a)(1)(A)(iv) (2012).

The Defendant asserts that although he had a previous DUI conviction and "some other driving infractions," no prior felonies were mentioned. He argues that the legislature's mandatory minimum sentence for a second offense DUI acknowledges the risk a repeat offender poses to society and to himself and that the court's reliance on his driving while under the influence in a high-traffic area to enhance his sentence was error. In DUI cases, Tennessee Code Annotated section 55-10-403(c) mandates a maximum sentence for DUI, "with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." *State v. Combs,* 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996).

The record reflects that this is the Defendant's second DUI conviction and that he continued to drive on a revoked license. According to the statement of the evidence, the trial court, "citing the [D]efendant's prior criminal history, the dangerous nature of driving intoxicated in a high-traffic area, and the [D]efendant's prior driving history," enhanced the Defendant's sentence from the forty-five-day mandatory sentence to 150 days. The Defendant's driving record shows that his driver's license was revoked on July 2, 2008. We note that the Defendant's first DUI conviction was shortly before his second DUI offense. Nothing in the record shows that the Defendant has any other criminal history. Our supreme court has held that a trial court is not required to consider enhancement or mitigating factors on the record for misdemeanor sentencing. *Troutman*, 979 S.W.2d at 274. Although the Defendant argues that no prior felonies were mentioned in his criminal history, Tennessee Code Annotated §§ 40-35-102(3)(B) and 40-35-103(A) (2010) provide that the purposes and principles of sentencing support confinement of defendants with a long history of criminal conduct and do not require that the court consider only prior felonies. The court properly considered the Defendant's criminal and driving history. We note that the Defendant was driving on Dolly Parton Parkway in Pigeon Forge, a high traffic area, when he was stopped by Officer Atchley. The dangerous nature of the Defendant's driving while intoxicated in a high-traffic area shows the Defendant's disregard for the safety of others on the road. We conclude that the trial court did not abuse its discretion by ordering the Defendant to serve 150 days' confinement.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____

JOSEPH M. TIPTON, PRESIDING JUDGE